# LAZARUS v. LEWIS.

1. A having a judgment against J for twenty-seven hundred dollars, obtained in an action of slander, agreed with J that if he would pay him seven hundred dollars to defray his expenses and pay the costs, and would convey to one J L property sufficient to discharge the residue of the judgment in trust for the separate use of the wife and children of J, and J accordingly made the conveyance: *Held*, that if the transaction was *bona fide*—if the judgment was not collusive, and the conveyance to the use of the wife and children of J was not intended to secure to J through the apparent ownership of his wife and children, the enjoyment of the property, that it was valid as a gift from A. That such an instrument as it was, for a valuable consideration, and absolute in its terms, was not required to be recorded either by the act of 1803, or by that of 1828; and that the consent of A to the conveyance could be established by proof, *dehors* the deed.

2. Where there are three subscribing witnesses to a deed, one of whom is dead, another resident out of the State, and the third one being called is not able to prove the delivery, the execution of the deed may be proved by other persons, and it is not indispensable to prove the hand writing of the absent witnesses.

Error to the Circuit Court of Butler.

This was a proceeding to try the right of property to certain slaves, in which the plaintiff in error was the plaintiff in execution, and the defendant claimed the property as trustee, in a deed executed by the defendant in execution.

The deed of trust, which was offered in evidence, recites that one Asa Arrington had recovered from Henry T. Jones, (the defendant in execution) in an action of slander, the sum of twenty-seven hundred dollars; that Jones and Arrington had entered into an agreement in writing, that Jones should pay Arrington seven hundred dollars, that sum being sufficient to pay the expenses of the suit, and that the residue should be paid to John Lewis, sen'r, in trust, for the benefit of the wife and children of Jones, to the separate use of the wife, free from the control of her husband. The deed then proceeds thus: "Now know ye, that I, the said Henry T. Jones, for and in consideration of the said debt of two thousand dollars, and of the premises, and of ten dollars to me in hand paid by the said John Lewis, sen'r, trustee, hereinafter nam-

ed, do hereby bargain and sell, convey and confirm unto the said John Lewis, sen'r, the following negroes, viz: Henly, about sixteen years old, valued at five hundred and fifty dollars; Maria, a girl, about eight years old valued at two hundred and fifty dollars; Major, a boy about four years old, valued at one hundred and seventy-five dollars; Dick, a boy, seven years old valued at two hundred and seventy-five dollars, to have and to hold, together with the increase of the females thereof, forever, upon the trust hereinafter expressed, viz: the said Lewis is to hold the said negroes upon the trust and for the use of Frances W. Jones, wife of said H. T. Jones now living, and hereafter to become and for their sole and separate use, free from the control or debts of the said H. T. Jones, and hold the same solely as trustee and allowing them to have the possession and services of the said slaves; and I the said Henry T. Jones reserve no power of revocation to this conveyance whatsoever. Given under my hand and seal," &c. Appended to the deed is an acknowledgement by the trustee, that he will accept and execute the trust which is signed and sealed by him, and witnessed by two witnessess.

The deed was recorded on the following certificate, which bears the same date as the deed.

" I, Matthew Patton, a justice of the peace, in and for said county, do certify, that I saw Henry T. Jones sign the above deed of trust, and likewise saw the above witnesses, to wit, &c. sign the same as witnesses to said deed of trust, all in the presence of each other. Given under my hand and seal.

MATTHEW PATTON, J. P."

One of the subscribing witnesses to the deed, being proved to be dead, another resident out of the State, and the third, who was called, not being able to prove the delivery, the court permitted the execution of the deed to be proved by Patton, before whom it was acknowledged, to which the plaintiff excepted.

The plaintiff also objected to the deed because of the defective record; also, because as the equity of redemption could be sold, the trustee could interpose no claim. That as Arrington was not a party to the deed, he was not bound by it, and there was therefore no consideration for the conveyance of the property. Because also, the deed did not carry out the agreement in writing between Arrington and Jones; and lastly, because the deed was void in consequence of the interest reserved to the grantor, but the

court permitted the deed to be read in evidence to the jury, to which the plaintiff excepted. The court also permitted Arrington to be examined as a witness, to prove his assent to the deed, to which the plaintiff also excepted.

Judgment being rendered in favor of the claimant, the plaintiff prosecutes this writ of error, and assigns for error,

1. In the proof of the execution of the deed.

2. In permitting the introduction of the deed in evidence, because of defective record, and because as Arrington was not a party to the deed, he was not bound by it, and there was therefore no consideration to make the deed valid.

3. The trustee could not dispute the levy, as the equity of redemption was subject to sale.

4. The court erred in permitting Arrington to prove his assent to the deed.

CRENSHAW, for plaintiff in error.

COOK, contra.

ORMOND, J.—In Thomas v. Wallis, at the last term, we held, that where all the witnesses to a deed were dead or beyond the jurisdiction of the court, proof of the hand writing of one of the witnesses was sufficient evidence, *prima facie*, of the execution of the deed to authorise it to be read to the jury. In this case, one of the subscribing witnesses was called, but was unable to prove the delivery. This is in principle, the same as if the testimony of the witness could not be obtained, and will authorise the introduction of other testimony to prove the due execution of the deed. [1 Phil. Ev. 475; Russell v. Coffin, 8 Pick. 143.]

Although proof of the hand writing of the attesting witness where his testimony cannot be had, or is unable, from forgetfulness, or from any other cause, to testify to the due execution of the deed, has been held sufficient evidence, *prima facie* of its execution, it by no means follows, that that is the only *media* of proof in such cases. On the contrary, if any suspicion whatever, is cast on the transaction, it is usual to require corroborating evidence, as for example, proof of the hand writing of the obligor. [See the cases collected on this head, in the 3d vol. C. & H. Phillips' Ev. 1300.] The proof in this case was that of a person who, although not a subscribing witness, appears to have been

present when the deed was executed, and by the evidence of a justice of the peace, before whom it was acknowledged by the grantor, for the purpose of registration. This was certainly much more satisfactory proof of its execution than would have been the proof of the hand writing of an absent subscribing witness, and was, in our opinion, sufficient to permit it to be read to the jury.

The remaining questions all depend on the construction of the deed and its validity, as a conveyance of the slaves.

It appears that one Asa Arrington had recovered from Henry T. Jones, (the defendant in execution,) a judgment for twenty-seven hundred dollars, in an action of slander; that Arrington agreed in writing with Jones, that if he would pay him seven hundred dollars, which would defray the expenses he had been put to in the prosecution of the suit, and pay the costs of the suit, and also pay the remaining sum of two thousand dollars to one John Lewis, sen'r, in trust for the benefit of the wife and children of Jones, that he would enter satisfaction on his judgment against Jones. A deed was accordingly executed by Jones, which after reciting these facts, conveys certain slaves to Lewis at prices which are named in the deed, and which in all are estimated at twelve hundred and fifty dollars, in trust, for the separate use of the wife, and as it would seem also, for the use of the children, though some words appear to be omitted; and securing to them the right to the possession and services of the slaves.

The objections raised to this deed, are first, that it was recorded on a defective certificate of its execution. We will not enter upon the enquiry, whether a defect in the *certificate* of the justice of the peace that the deed was proved to be executed, when in fact full proof of its execution, or an acknowledgment of that fact by the maker was made before him, would invalidate the *registration* of the deed, because we think this deed was not required by law to be recorded.

The statutes requiring registration of deeds of personal property are first, the statute of frauds (so called,) to be found, in Aik Dig. 207. The second section declares "and moreover, if any conveyance be of goods or chattels, and be not on *consideration deemed valuable in the law*, it shall be taken to be fraudulent within this act, unless the same be by will duly proved and recorded, or by deed in writing acknowledged and proved. If the

same deed include lands, also in such manner as conveyances of lands are by law directed to be acknowledged or proved, or if it be of goods and chattels only, then acknowledged or proved by one or more witnesses in the superior or county court, wherein one of the parties lives, within twelve months after the execution thereof, or unless possession shall really and *bona fide* remain with the donee." The remaining part of this section relates to a *loan* of property, or the reservation of a condition, reversion or remainder in goods or chattels, which the statue requires to be by will or deed, &c., and in like manner recorded within 3 years.

The 3d section is, "this act shall not extend to any estate or interest in any lands, goods or chattels, or any rents, common or profit out of the same, which shall be upon *good* consideration and *bona fide* lawfully conveyed or assured to any person, body politic or corporate."

This portion of this statute has received a construction by this court in Killough v. Steele, [1 S. & P. 62,] and again in Baker v. Washington, [5 ib. 142.] It was there held, that the act did not make it necessary to the validity of a deed made upon an absolute or conditional sale of personal property upon *valuable* considera-tion, that it should be recorded within twelve months, and that the term *good* consideration in the 3d section, meant *valuable* con-sideration. That the design of the statute was to operate on conveyances not founded on valuable consideration, where the possession did not remain with the *donee.*

In 1828 an act was passed, requiring all deeds and conveyan-ces of personal property to *secure any debt or debts,* to be recor-ded in the office of the clerk of the county court, within thirty days, or that the same should be void against creditors and subse-quent purchasers without notice. [Aïk. Dig. 208, § 5.]

The deed in this case, is not a deed made in trust, to secure a debt, and is neither within the letter or spirit of the last act. As the conveyance was for the benefit of a married woman, a trustee was interposed in whom the legal title was vested, not for the purpose of securing the payment of debts, but absolutely and without reservation, for the benefit of the *cestuis que trust.* It is therefore not within the statute of 1828, which only requires the registration of deeds, made upon condition, nor within the act of 1803 first cited, because it is a conveyance upon a *valuable* con-sideration, assuming, as we must do in this case, from the man-

ner in which the question is presented, that the judgment obtained by Arrington, was *bona fide*, and not collusive; that the gift by Arrington, to the wife and children of Jones, was also *bona fide*, and not intended through the apparent ownership of the wife and children to secure to Jones the enjoyment of this property, and that the slaves were fairly valued. We do not doubt that the consideration was a valuable one; Jones was indebted by judgment to Arrington; he could therefore doubtless have sold this property to him in discharge of the judgment, and Arrington could certainly have given it to the wife and children of Jones. Can it make any difference that by this direction, and in discharge of the judgment, Jones made the conveyance directly to the trustee for the same purpose? As therefore, the conveyance, by the direction of Arrington, discharged *pro tanto* the judgment; it was in fact, a monied consideration, and therefore, as the deed was absolute, and the consideration valuable, it was not such an instrument as the act of 1803 required to be recorded.

A deed made upon a full and valuable consideration, and absolute in its terms, might be declared fraudulent if there was no change of the possession, and this circumstance was not satisfactorily explained, as has been repeatedly held in this court; for the act of 1803 merely declares that *registration* shall not be necessary to the validity of the deed, and does not interfere with the presumption of the common law, that possession remaining with the grantor after an absolute sale, is a badge of fraud. No question was mooted in the court below, so far as we can judge from the record as to the possession being unchanged. It could, however, admit of but little doubt, that the possession by the wife, of property, held by her to her sole and separate use, would not be the possession of the husband, though he might reside under the same roof with her.

It was further objected that the deed was void, because Arrington was not a party to it. It was certainly necessary to prove the consent of Arrington to the conveyance, which was merely proving the payment of the consideration expressed in the deed, as it was in effect a payment of the judgment. This was a fact *dehors*, the deed which it was competent to prove, either by Arrington or by a third person.

These views dispose of all the assignments of error. The deed

being upon a valuable consideration and absolute to the wife and children, reserving no interest to the grantor, there was nothing upon which the plaintiff's execution could operate, and the claim was therefore properly interposed by the trustee.

Let the judgment be affirmed.